UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **David Wade,** | ) | **CASE NO. 1:07 CV 3148** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Patrick Bishop, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. 16). This is a civil rights case. For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.

### FACTS

Plaintiff, David Wade, filed this lawsuit against defendants, Patrick Bishop and Jason Dwyer[1] alleging wrongdoing in connection with plaintiff's arrest and subsequent prosecution for

---

[1] Plaintiff also filed this lawsuit against "various unknown officers." Plaintiff has yet to identify these officers.

1

aggravated disorderly conduct.

Defendants are police officers employed by the City of Cleveland. In the early hours of September 8, 2006, defendants heard gunshots in the vicinity of East 77th Street. At the time, plaintiff was purchasing gas at a nearby gas station. Fearing that he might be in danger, plaintiff quickly drove away and attempted to enter the house of a nearby relative. Meanwhile, defendants began driving towards the area from which the shots were fired. Plaintiff saw defendants' car approaching and believed the vehicle might be that of the shooter. Unable to enter his relative's house, plaintiff began running. Plaintiff ran through a vacant lot and into a fenced-in backyard. At some point, plaintiff heard the officers ordering him to stop. He stopped and placed his hands behind his head. According to plaintiff, the officers "slammed him to the ground" and handcuffed him. Defendant Bishop then said, "I should break your leg for running." Defendant Bishop proceeded to strike plaintiff in the leg several times with a flashlight or nightstick. Defendant Dwyer was present the entire time and did not intervene. Thereafter, plaintiff was unable to walk and defendants dragged him to the street. Police officers searched the area, but neither weapons nor contraband was found. An hour or two later, emergency personnel arrived at the scene and plaintiff was transported to the hospital. Plaintiff was treated for three fractures to his leg.

Five days later, plaintiff was charged with aggravated disorderly conduct. On September 13, 2006, defendant Dwyer met with a City of Cleveland assistant prosecutor and prepared a probable cause determination. Six days after the indicent, defendant Dwyer filed a police report indicating that the City of Cleveland was the victim of disorderly conduct. Thereafter, plaintiff proceeded to trial on the criminal charge. At the close of the evidence, plaintiff moved for

acquittal.  His attorney argued that he did not engage in disorderly conduct, but admitted that plaintiff failed to comply with a lawful order.   Specifically, his attorney stated, "that's what he did, but he's not charged with that."  The trial court denied the motion for acquittal.  Thereafter, plaintiff was acquitted by a jury.

Plaintiff filed this lawsuit asserting six claims for relief.  Count one is a claim for excessive force/malicious prosecution/unreasonable seizure brought under 42 U.S.C. § 1983.  Count two is claim for conspiracy to violate constitutional rights.  Count three asserts malicious prosecution and count four appears to be a claim for intentional infliction of emotional distress.  Count five is a claim for "false arrest, false imprisonment, and invasion of privacy" brought under Ohio law.  Count six is a common law claim for assault and battery.

Defendant Dwyer moves for summary judgment on all claims.  Defendant Bishop moves for summary judgment on all claims except excessive force, assault and battery and intentional infliction of emotional distress.  Plaintiff opposes the motion.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

3

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## **ANALYSIS**

1.  Count one (28 U.S.C. § 1983: excessive force/unreasonable seizure/false arrest/malicious prosecution[2])

    A. Excessive force

Defendant Dwyer moves for summary judgment with regard to plaintiff's claim of excessive force.  According to defendant Dwyer, he did not actively participate in the use of

---

[2] To the extent plaintiff asserts a malicious prosecution claim under the Fourth Amendment, that claim will be addressed along with the state law malicious prosecution claim asserted in count three.

force. Moreover, defendant Dwyer argues that there is no evidence that he knew that defendant Bishop was about to use force or that he had an opportunity to prevent defendant Bishop's use of excessive force.

In response, plaintiff argues that defendant Dwyer heard defendant Bishop say, "I should break your legs for running." According to plaintiff, this statement indicates that defendant Bishop was about to use force. In addition, plaintiff argues that the beating lasted long enough that defendant Dwyer had time to prevent or stop the continued beating of plaintiff.

It is well settled that a police officer may be liable for "failure to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

> Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.

*Id*.

Upon review, the Court finds that defendant Dwyer is entitled to summary judgment on plaintiff's excessive force claim. Simply put, plaintiff offers no *evidence* in support of his claim. Plaintiff points only to the fact that defendant Dwyer was "present for the entire incident." By plaintiff's own admission, he was struck four times in the leg. Plaintiff could not testify as to where defendant Dwyer was located during the beating. Nor is there any evidence as to the length of time it took for defendant Bishop to allegedly strike plaintiff four times. When asked, plaintiff could not recall whether it took a few minutes or a few seconds. Given this lack of evidence, no reasonable juror could conclude that defendant Dwyer had the opportunity and means to prevent the harm from occurring.

### B. Unreasonable seizure/False arrest

5

Defendants argue that the existence of probable cause defeats plaintiff's claim for unreasonable seizure/false arrest. Defendants argue that the validity of the arrest must be judged based on whether probable cause existed, not whether the officers "gave plaintiff the right reason." According to defendants, they had probable cause to detain plaintiff until defendants determined whether plaintiff might have been involved in the shooting. Regardless, defendants argue that they had probable cause to believe that plaintiff obstructed official business. According to defendants, plaintiff's counsel in his criminal trial admitted that he failed to comply with the officers' order to stop. Even though plaintiff was not charged with that crime, probable cause supports the seizure.

In response, plaintiff points out that defendants did not charge him with any crime at the scene.

Probable cause has been defined by the Supreme Court as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires "only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). The quantum of proof necessary to establish probable cause is "significantly lower" than the amount required for proof of guilt. *Id*. at 262 n.1. In fact, the constitutionality of an arrest does not depend on whether the suspect actually committed a crime. *Michigan*, 443 U.S. at 36. The mere fact that a suspect is later acquitted of the offense is irrelevant to whether the arrest was lawful. *Id*.

Upon review, the Court finds that plaintiff's claim for false arrest/unreasonable seizure fails as a matter of law because probable cause to arrest plaintiff existed on the date the incident in question occurred.  By all accounts, the defendants ordered plaintiff to stop, yet he continued running through vacant lots.[3]  As such, defendants had probable cause to arrest plaintiff.[4]  The fact that defendants did not charge plaintiff at the scene does not equate to a lack of probable cause to arrest.[5]  Nor does the fact that plaintiff was ultimately charged with aggravated disorderly conduct mean that defendants lacked probable cause to arrest plaintiff for failing to comply with a police order.  Therefore, reasonable minds could only conclude that defendants had probable cause to arrest plaintiff on the day the incident occurred.  As such, plaintiff's claims for false arrest and unlawful seizure fail.[6]

---

[3] Although plaintiff would likely claim that he did not hear defendants' order to stop, probable cause is determined from the viewpoint of the officers.

[4] Plaintiff's attorney even admitted to the jury at his criminal trial that plaintiff failed to comply with a police order.

[5] Plaintiff appears to confuse the concept of "arrest" with the concept of "charge."  Although the parties do not argue the point, the Court presumes that plaintiff's handcuffed detention constitutes an "arrest" for purposes of the Fourth Amendment.  Thus, while plaintiff points out that defendants did not charge plaintiff, the lack of the filing of charges does not mean that defendants did not have probable cause to arrest plaintiff.

[6] It is entirely unclear from the briefs whether defendants are asserting the defense of qualified immunity.  Defendants' motion contains a section entitled qualified immunity, which simply sets for the black letter law on the subject.  There is no analysis contained in that section.  The brief in opposition, however, presumes that the defense was properly raised.  Regardless, under a qualified immunity analysis, plaintiff's claims fail because the existence of probable cause equates to the lack of a constitutional violation.

      2.      Count two (conspiracy)

Defendants move for summary judgment with regard to count two. According to defendants, plaintiff's complaint fails to properly allege a claim for conspiracy. Defendants claim that, at best, the complaint alleges that defendants conspired to violate his constitutional rights by withholding and misrepresenting information. Defendants equate this to a claim for spoliation of evidence, which they argue can only be based on the *destruction* of evidence. Defendants further argue that there is no evidence that an agreement exists to inflict any injury on plaintiff.

In response, plaintiff argues that conspiracy claims can be based on circumstantial evidence. According to plaintiff, the facts offered by plaintiff demonstrate that a conspiracy existed. For example, plaintiff states as follows,

> ....Defendants, as partners working closely together, necessarily agreed to falsify the information in the probable cause determination document and criminal complaint. They inherently agreed to collaborate to institute proceedings and continue those proceedings through false testimony and by failing to come forward to the prosecutor about the truth.

Upon review, the Court finds that defendants are entitled to summary judgment on count two because plaintiff fails to present evidence supporting his claim. While plaintiff correctly notes that circumstantial evidence can be used to support a conspiracy claim, plaintiff offers no evidence, circumstantial or otherwise, in support of this claim. The conspiracy section of plaintiff's brief does not contain a single citation to any piece of evidence. As defendants point out, plaintiff offers no evidence indicating that defendants agreed to falsify information contained in the probable cause determination report. Given that the document was prepared solely by defendant Dwyer, plaintiff's generalized statement will not suffice as evidence. In addition, there is no evidence or suggestion that an "inherent agreement" existed regarding the

8

"collaboration" of the legal proceedings. Absent any evidence, plaintiff's claim fails and defendants are entitled to summary judgment.

       3.       Count three (malicious prosecution)

Defendants argue that count three fails because probable cause existed to prosecute plaintiff. Specifically, defendants point out that the trial court denied plaintiff's motion for an acquittal. As such, defendants argue that probable cause must have existed. In addition, defendant Bishop argues that there is no evidence that he prepared any document that formed the basis of the charge filed against plaintiff. Defendants further claim that the prosecutor's involvement in the decision to prosecute plaintiff insulates defendant Dwyer from liability.

Plaintiff argues that defendants did not have probable cause to file charges against him because "there was no reason to believe that [plaintiff] was running simply to disturb the peace." According to plaintiff, given the gunfire that occurred shortly before the incident, they had no reason to believe that plaintiff was running in order to "recklessly inconvenience" anyone. Plaintiff argues that the only evidence supporting defendants' position consists of their own self-serving affidavits. According to plaintiff, whether probable cause existed is a disputed question of fact that the jury must determine. Plaintiff further argues that the affidavits provided by the defendants contain untruthful grounds for probable cause and that there is an inconsistency between the defendants' trial testimony and other documents. According to plaintiff, the probable cause determination indicates that plaintiff met the "description of a male firing a weapon." Plaintiff points out, however, that all of the police officers who testified at plaintiff's criminal trial stated that they did not see the shooter. Rather, they only heard shots. As such, there was no "description" of the shooter. Plaintiff argues that defendants did not charge

9

plaintiff at the scene and, instead, filed charges only after they realized they would face scrutiny for plaintiff's injury.

For purposes of a Fourth Amendment malicious prosecution claim, federal law provides that a probable cause determination made by the trial court conclusively establishes the element of probable cause for a malicious prosecution claim. *See, e.g., Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007). An exception exists, however, if the defendants provided false information in order to establish probable cause. Although plaintiff alleges that defendant Dwyer provided false information to the prosecutor, *i.e.*, stated that plaintiff met the description of the shooter, defendants correctly point out that the trial judge determined that probable cause existed without relying on the erroneous statement.[7] *Id*. ("because [plaintiff] has not shown that the state judge relied on false information to determine that probable cause existed...[plaintiff] is precluded from relitigating the matter on a theory of malicious prosecution" under Section 1983). Therefore, the exception for false statements does not apply in this case and the trial court's determination is given preclusive effect. Accordingly, to the extent the malicious prosecution claim is asserted under federal law, defendants are entitled to summary judgment.

The elements of the tort of malicious criminal prosecution under Ohio law are (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9 (Ohio1996). *See also*, *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 117 (Ohio 1994); *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, syllabus (Ohio 1990).

---

[7]  Plaintiff points out that Rule 29 is a higher standard than probable cause. Thus, in order to deny a Rule 29 motion, the trial judge must necessarily have determined that probable cause existed.

The only element defendants raise in their motion is lack of probable cause.

Unlike federal law, Ohio does not give preclusive effect to a trial court's determination of probable cause. *See, e.g., Schweller v. Schweller*, 1997 WL 793106 (Oh. Ct. App. 1st Dist. Dec. 26, 1997); *Briner v. City of Ontario*, 2007 WL 2891343 (N.D. Ohio 2007). Rather, it is one factor to consider along with the rest. *Id*.

Upon review, the Court finds that reasonable minds could differ as to whether probable cause supported plaintiff's prosecution for aggravated disorderly conduct. As an initial matter, defendants correctly note that under Ohio law, the denial of a motion for acquittal does not mean that probable cause existed as a matter of law.  Given the delay between the occurrence of the offense and the filing of the charge, the apparent misstatement in the probable cause determination, and the attenuated nature of plaintiff's conduct to the charged offense, the Court concludes that a reasonable juror could find that probable cause for the prosecution was lacking. Importantly, the issue before the trial court was not whether plaintiff engaged in the alleged misconduct, but rather, whether the alleged misconduct met the definition of aggravated disorderly conduct. The Court finds that reasonable minds could differ as to whether, based on a totality of the circumstances, there was probable cause to believe that plaintiff's alleged misconduct satisfied the definition of aggravated disorderly conduct. Accordingly, summary judgment is not warranted to the extent the malicious prosecution is asserted under state law.

 Defendant Bishop argues that he did not supply the alleged misstatement contained in the probable cause determination and, therefore, his conduct is insulated from liability. Plaintiff offers no response. Rather, plaintiff simply continually argues that "defendants" supplied false statements. Once again, however, plaintiff points to no *evidence* supporting his position that

11

defendant Bishop provided any false information or otherwise engaged in malicious prosecution. The fact that defendant Bishop testified at plaintiff's trial (along with numerous other police officers) is insufficient, in and of itself, to create a question of fact on this claim. Accordingly, defendant Bishop is entitled to summary judgment with respect to plaintiff's state law claim for malicious prosecution.

Defendant Dwyer argues that the decision by the prosecutor to institute charges relieves him of liability. Plaintiff does not respond to this issue. Upon review, the Court finds that summary judgment is not warranted.

A prosecutor's decision whether to prosecute insulates an informer who provides "information which he believes to be true, and the [prosecutor] in the exercise of his uncontrolled discretion initiates criminal proceedings...." *Archer v. Cachat*, 135 N.E.2d 404, 406 (Ohio 1956)(per curium). However, if "the information is known by the giver to be false, an intelligent exercise of the [prosecutor's] discretion becomes impossible," and the individual providing the false information can be liable for malicious prosecution. *Id*. In this case, it is undisputed that defendant Dwyer informed the prosecutor that the plaintiff fit the description of the shooter. All of the officers testifying at trial, however, indicated that the shooter was never seen. Thus, a reasonable juror might conclude that the information provided to the prosecutor was knowingly false. As such, the prosecutor could not exercise proper discretion when determining whether to institute proceedings and the prosecutor's involvement does not shield defendant Dwyer from liability.[8]

---

[8] In the reply brief, defendant Dwyer argues that the prosecutor performed an independent investigation, which also should relieve defendant Dwyer from liability. Defendant, however, provides no

    4.      Counts four and five (intentional infliction of emotional distress/false arrest/false imprisonment/invasion of privacy)

Defendant Dwyer moves for summary judgment on count four. Both defendants seek summary judgment on count five. In response, plaintiff concedes that counts four and five both fail. As such, summary judgment in favor of defendants[9] is warranted on these claims.

    5.      Count six (assault and battery)

Defendant Dwyer argues that he is entitled to summary judgment with respect to plaintiff's assault and battery claim because defendant Dwyer never used force against plaintiff. Plaintiff argues that Ohio law imposes liability on a bystander who has the opportunity to intervene to stop an assault and battery, but fails to do so. Plaintiff, however, cites no law in support of this proposition. Regardless, as set forth above, there is no evidence that defendant Dwyer had the opportunity to intervene on behalf of plaintiff. As such, summary judgment in favor of defendant Dwyer is appropriate.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in PART and DENIED in PART. Summary judgment is granted as to defendant Bishop on all claims raised in the motion. The remaining claims against defendant Bishop are excessive force

---

    evidence regarding this investigation, other than to point out that other police officers testified at trial. This, in and of itself, is insufficient to relieve defendant Dwyer from liability as a matter of law.

[9]    Although defendant Bishop did not expressly seek summary judgment, the Court finds that summary judgment in favor of defendant Bishop is warranted in that plaintiff concedes he cannot succeed on count four.

and assault and battery. With regard to defendant Dwyer, summary judgment is appropriate on all claims except the state law malicious prosecution claim. That is the sole remaining claim asserted against defendant Dwyer.

      IT IS SO ORDERED.


                              /s/ Patricia A. Gaughan
                              PATRICIA A. GAUGHAN
                              United States District Judge


Dated: 10/17/08